Opinion issued May 8, 2008









     






In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00412-CV




KATIE RODEA, Appellant

V.

CHEVRON PHILLIPS CHEMICAL COMPANY, LP, Appellee




On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2004-72338




MEMORANDUM OPINION
          Appellant, Katie Rodea, appeals from an order granting summary judgment in
favor of appellee, Chevron Phillips Chemical Company (“Chevron”), thereby denying
her relief for her gender discrimination claim premised on unequal pay.


 See Tex.
Lab. Code Ann. § 21.051(1) (Vernon 2006). In her second issue, Rodea asserts the
trial court erred by granting summary judgment in favor of Chevron because fact
issues existed as to whether Rodea made a prima facie case that she was treated less
favorably than similarly situated men. We conclude that Rodea presented some
evidence to raise an issue of fact and that summary judgment was therefore improper. 
We do not reach Rodea’s first issue in which she asserts an alternate ground to
reverse the judgment. We reverse and remand to the trial court for further
proceedings.
BackgroundRodea began working for Philips Petroleum Company, Chevron’s predecessor
company, in 1996 as a clerk trainee. She transferred to Chevron’s Pasadena facility
in September 2001 and was promoted to non-exempt cost accounting clerk earning
$33,680 a year. At the beginning of her employment at Chevron in Pasadena, Rodea
was mainly responsible for clerical duties and certain basic accounting tasks
performed under the supervision of Jim Martin. In 2001, Rodea began performing
accounting duties for all “Work in Progress” (“WIP”) and “Distribution in Progress”
(“DIP”) functions at the Pasadena complex. 
          Rodea was the sole female employee on a team of three employees performing
various accounting work. While at Chevron’s Pasadena plant, Rodea worked with
two male employees, Jason Adams and Gary Buckland. Rodea, Buckland, and
Adams all worked under Martin’s supervision. When Buckland was hired, Martin
assigned Rodea, Adams, and Buckland each to a specific product line for which each
person was individually responsible. Prior to Buckland’s arrival at the Pasadena
complex, Rodea was responsible for the WIP and DIP functions for all four product
lines. In April 2003, Michael Pelayo replaced Adams and took over his job
responsibilities. Rodea trained Buckland and Pelayo in the WIP and DIP functions
when they arrived at the Pasadena complex.
          While at Chevron, Rodea attended college part-time until May 2004, when she
received a bachelor of science degree from the University of Houston–Clear Lake. 
Chevron paid for approximately 80 percent of her education.
          In March 2004, Rodea filed a claim with the Equal Employment Opportunity
Commission, complaining of gender discrimination due to her level of pay compared
to the male employees, in addition to other complainants. Rodea resigned from
Chevron in June 2004, about one month after receiving her degree. She filed this
action in December 2005. Rodea’s cause of action for “Gender Discrimination” was
on the ground that “Rodea did not receive equal pay for equal work in violation of
Tex. Labor Code § 21.051.”



          Chevron filed a motion for summary judgment that attacked Rodea’s ability to
make a prima facie case of discrimination. Chevron’s sole challenge in the motion
for summary judgment was that Rodea could not raise an issue of fact concerning her
prima facie burden on the element that requires proof that “comparison employees
held jobs that required equal skill, effort, and responsibility at the time.” By referring
to the reasons delineated in the affidavit by Martin, Chevron asserted Rodea’s job did
not require the equal skill, effort, and responsibility as the other employees. First,
according to Martin’s affidavit, the other employees had “assignments to larger and
more complex product lines.” Buckland was assigned the Polyethylene product line,
which was the largest product line. Adams, and later Pelayo, was assigned the
Polypropylene product line. Polypropylene was the second-largest and also the most
complex due to Chevron’s participation in a joint venture partnership associated with
this product line. Rodea was assigned K-Resin and Neohexene product lines, which
were the smallest and least complicated from a cost accounting perspective. Chevron
also referenced a chart prepared by Martin, based on his personal knowledge, that
listed the jobs and responsibilities assigned to each of the employees. The chart
created by Martin lists roughly 75 tasks regularly completed by Rodea and the male
employees. While Buckland, Pelayo, and Rodea share responsibility for some of the
tasks, the chart shows that either Buckland or Pelayo were solely responsible for
some of the tasks listed and that Rodea was solely responsible for other tasks. 
Second, the male employees “were directly involved in the budget preparation for the
product lines,” whereas Rodea only provided data for the budget preparation and was
not ultimately responsible for the completed task. Unlike Rodea, Buckland was
responsible for the completion of the monthly budgets for each of the product lines
and assisted in the preparation of the annual budget report for management
presentation. Third, the male employees had a level of experience and understanding
of plant accounting that Rodea did not have during her employment, which led to
differences in their work produced. Pelayo, Adams, and Buckland were responsible
for “settling” all work orders and projects that did not clear in the normal course of
events. In comparison, Rodea, who assisted in providing data, was not ultimately
responsible for the task. Fourth, the other employees had “more education,
experience and responsibilities” than Rodea. Attached to Martin’s affidavit were the
job applications and resumes of Rodea, Buckland, Pelayo, and Adams. The
applications show that Buckland did not have a college degree, but that he had taken
college level classes and had worked in oil and gas accounting for seven years before
starting with Chevron in 1985, which gave him a total of over twenty years of
accounting experience at the time he was transferred to the Pasadena facility. The
applications of Adams and Pelayo show that they each had college degrees in
accounting. Rodea’s application showed that she had only administrative experience
prior to working at Chevron. Rodea also did not obtain her college degree until
shortly before she quit.
          Chevron also produced the deposition of Rodea to show that she testified she
did not know the employment or education history of Buckland, Pelayo, or Adams. 
She also testified that she was not certain as to the exact job duties or pay rates of the
male employees.
          Rodea responded with the remaining portions of her testimony, which relayed
she was paid less than her two male co-workers who, since 2001, performed the same
work as she did. The trial court rendered summary judgment in favor of Chevron,
without stating the grounds for the ruling. 
Summary Judgment In Rodea’s second issue, she asserts that the trial court erred by granting the
motion for summary judgment filed by Chevron because she raised an issue of
material fact on the challenge to her prima facie case by producing some evidence
that she was similarly situated to the male employees who were paid more than she
was paid. 
A. Standard of Review
          We review a trial court’s grant of summary judgment de novo. Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). Traditional summary
judgment is proper only when the movant establishes that there is no genuine issue
of material fact and that the movant is entitled to judgment as a matter of law. Tex.
R. Civ. P. 166a(c). In reviewing a traditional summary judgment, we must indulge
every reasonable inference in favor of the nonmovant, take all evidence favorable to
the nonmovant as true, and resolve any doubts in favor of the nonmovant. Valence,
164 S.W.3d at 661. A defendant who moves for traditional summary judgment on the
plaintiff’s claim must conclusively disprove at least one element of the plaintiff’s
cause of action. Little v. Tex. Dep’t of Criminal Justice, 148 S.W.3d 374, 381 (Tex.
2004). When, as here, a summary judgment does not specify the grounds on which
it was granted, we will affirm the judgment if any one of the theories advanced in the
motion is meritorious. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157
(Tex. 2004). 
B. The Labor Code
          Rodea brought her discrimination claim under section 21.051 of the Texas
Labor Code. Under section 21.051, an employer commits an unlawful employment
practice if, because of sex, the employer “fails or refuses to hire an individual,
discharges an individual, or discriminates in any other manner against an individual
in connection with compensation or the terms, conditions, or privileges of
employment.” Tex. Lab. Code Ann. § 21.051(1). The Texas Legislature modeled
chapter 21 of the Texas Labor Code after federal law for the express purpose of
carrying out the policies of Title VII of the Civil Rights Act of 1964 and its
subsequent amendments. Id. §21.001(1); Wal-Mart Stores, Inc. v. Canchola, 121
S.W.3d 735, 739 (Tex. 2003). Consequently, when reviewing a claim brought under
chapter 21, we may look not only to cases involving the state statute, but also to cases
interpreting the analogous federal provisions of Title VII. See Caballero v. Cent.
Power & Light Co., 858 S.W.2d 359, 361 (Tex. 1993).
          In discrimination cases that have not been fully tried on the merits, we apply
the burden-shifting analysis established by the United States Supreme Court. 
Wal-Mart Stores, Inc., 121 S.W.3d at 739; see also Reeves v. Sanderson Plumbing
Prods., Inc., 530 U.S. 133, 142–43, 120 S. Ct. 2097, 2106 (2000); M.D. Anderson
Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 24 (Tex. 2000). Under the burden-shifting analysis, the plaintiff has the initial burden to come forward with a prima
facie case of discrimination.


 Reeves, 530 U.S. at 142, 120 S. Ct. at 2106; Quantum
Chem. Corp. v. Toennies, 47 S.W.3d 473, 477 (Tex. 2001). Other than the prima
facie burden, Chevron does not challenge any of the remaining burdens and we
therefore do not address any of the burdens beyond the prima facie case. 
          In order to make a prima facie case, the plaintiff must show that the plaintiff
(1) is a member of a class protected by the Act; (2) suffered an adverse employment
decision; (3) was qualified for the position held; and (4) was treated less favorably
than similarly situated members of the opposing class. See Reeves, 530 U.S. at 142,
120 S. Ct. at 2106; see also Farrington v. Sysco Food Servs., Inc., 865 S.W.2d 247,
251 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Chevron makes no
challenge to the first three elements of Rodea’s prima facie case. The challenge by
Chevron is only to the fourth element, whether Rodea was similarly situated to the
male employees. Concerning the fourth element, the Texas Supreme Court has said
that employees are similarly situated if their circumstances are comparable in all
material respects, including similar standards, supervisors, and conduct. Ysleta Indep.
Sch. Dist. v. Monarrez, 177 S.W.3d 915, 917 (Tex. 2005).
C. Analysis 
          Rodea makes a prima facie showing of discrimination by producing some
evidence that her circumstances were comparable in all material respects to the male
employees, including similar standards, supervisors, and conduct. See Ysleta, 177
S.W.3d at 917. Taking the nonmovant Rodea’s evidence as true, as required for
summary judgments, it raises a fact issue concerning whether her position was similar
in all material respects to the men’s positions, but the men were paid more.
          Rodea disputes the claim by Chevron that male employees had assignments to
larger and more complex product lines. Although Chevron claimed Rodea’s product
lines were the least complicated from a cost-accounting perspective, she testified that
the two lines she covered were smaller in terms of volume produced for the plant, but
all four of the product lines were “set up the same” so the cost structures would not
make the lines more complex, and the only difference was the raw materials used.
Furthermore, although Rodea was assigned to the smaller lines, she had twice the
number of lines as each of the men. Taking all evidence in the light most favorable
to Rodea and making all reasonable inferences in her favor, the summary judgment
evidence shows Rodea’s work on the product lines was similar in all material respects
to the work by the men.
          Rodea disputes the assertion that male employees were directly involved in the
budget preparation for the product lines, but she only provided data without ultimate
responsibility for the completed task. Rodea testified that Buckland was “not coming
up with the numbers” because “[a]ccounting has never made the decision on what the
budget numbers actually are” since that decision “comes from engineering,
operations.” She stated that she provided the numbers to Buckland, which he then
compiled and gave to Martin. Taking all evidence in the light most favorable to
Rodea and making all reasonable inferences in her favor, Rodea produced some
evidence to show that the male employee’s role in the preparation of the budget was
not a material difference in the work they performed as compared to the work she
performed.
          Rodea responds to the assertion by Chevron that she did not have an
understanding of plant accounting equal to that of her male counterparts. In her
deposition, Rodea stated that before the arrival of two of the male employees, she was
responsible for “settling” all work orders that did not clear in the normal course,
which shows that she had a level of experience and understanding of plant accounting
similar to the male employees. Furthermore, she stated that she trained Buckland and
Pelayo in the WIP and DIP functions, which also suggests that she had a similar
understanding of plant accounting. Taking all evidence in the light most favorable
to Rodea and making all reasonable inferences in her favor, Rodea raised a fact issue
as to whether her understanding of plant accounting was equal to that of her male
counterparts.
          Rodea responds to the assertion by Chevron that the male employees had “more
education, experience and responsibilities” than she. Rodea contends the education
and experience difference are not pertinent in this situation because she had
materially the same job responsibilities as the men. Taking all evidence in the light
most favorable to Rodea and making all reasonable inferences in her favor, Rodea
produced some evidence to show that despite the differences in education and
experience, her responsibilities were comparable in all material respects to the male
employees, including similar standards, supervisors, and conduct. See Ysleta, 177
S.W.3d at 917. 
          Chevron attempts to impeach Rodea’s testimony by pointing out that she
admitted that she was not sure of all of the male employees’ job responsibilities or
their exact pay. Chevron also points to the difference in the titles of Rodea and the
male employees. However, under the standard for summary judgments, we must
indulge every reasonable inference in favor of the nonmovant, take all evidence
favorable to the nonmovant as true, and resolve any doubts in favor of the
nonmovant. See Valence, 164 S.W.3d at 661. Applying this standard requires us to
disregard evidence of Rodea’s unawareness of the exact pay or exact duties of the
male employees and the difference in the job titles. Id. Rodea is not required to
conclusively prove that she was similarly situated to the male employees; rather
Chevron must conclusively prove that Rodea cannot establish her prima facie case as
a matter of law. See Little, 148 S.W.3d at 381. Rodea’s burden is to raise an issue
of fact on the matter of whether her circumstances were comparable in all material
respects to the male employees. See Ysleta, 177 S.W.3d at 917.
          Rodea’s evidence is sufficient to raise an issue of fact. The evidence shows
that she and the men reported to the same supervisor, that they were each assigned a
product line, for which each employee was responsible for “the WIP and DIP, the
reactor production and the production numbers, the usage efficiency, variance
analysis, manufacturing cost statement, meeting with operations, reviewing costs,
maintenance reports, journal entries, updating of allocations, over and
underabsorption,” and that each performed special projects for Martin. Rodea
testified that Buckland and Pelayo each told her that their responsibilities were very
similar to hers. Additionally, Rodea stated she saw the male employees primarily
performing tasks similar to hers. Furthermore, Rodea and the other employees were
subject to the same standards in the form of accounting protocols that provide the
same expectations of all employees, and Rodea’s performance evaluations showed
that she was a recognized achiever. We conclude Rodea produced some evidence to
make a prima facie case that her circumstances were comparable in all material
respects to the male employees, including similar standards, supervisors, and conduct. 
See Ysleta, 177 S.W.3d at 917. 
          Chevron’s motion for summary judgment plainly stated that it was challenging
Rodea’s ability to meet her prima facie burden to show that she was similarly situated
to the male employees. Because Chevron’s motion for summary judgment only
challenged whether Rodea made a prima facie case, we do not address the remaining
analysis under the shifting burdens of proof that become applicable after a plaintiff
makes a prima facie case. See Burdine, 450 U.S. at 254, 101 S. Ct. at 1094; Quantum,
47 S.W.3d at 477. We sustain Rodea’s second issue.



Conclusion
          We reverse the judgment of the trial court and remand for further proceedings.
 

                                                                        Elsa Alcala
                                                                        Justice
Panel consists of Justices Taft, Keyes, and Alcala.