

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00134-CV

Fred **BEEBE**,
Appellant

v.

City of San Antonio through its agent, **CITY PUBLIC SERVICE BOARD OF SAN
ANTONIO** d/b/a CPS Energy,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-08789
Honorable Martha B. Tanner, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Patricia O. Alvarez, Justice
            Luz Elena D. Chapa, Justice

Delivered and Filed:  September 10, 2014

AFFIRMED

Fred Beebe brought claims against his employer, the City of San Antonio through its agent,

City Public Service Board of San Antonio d/b/a CPS Energy, for race, color, and age

discrimination and for retaliation. CPS Energy filed a motion for traditional and no-evidence

summary judgment, which the trial court granted as to all claims. On appeal, Beebe argues the trial

court erred in granting summary judgment on his discrimination claims. We affirm.

**BACKGROUND**

Beebe, who is African American and over the age of forty, began his employment with CPS Energy as an account manager in its Retail Energy Division in 1998. In 2004, CPS Energy decided to reorganize the account manager position, creating two categories of account managers: Mid-Market Account Managers/Business Account Manager (BAM) and Large Commercial Account Managers/Energy Solution Manager (ESM). Although BAMs and ESMs had similar duties, the level of responsibility between the two positions varied greatly. ESMs were responsible for accounts with $350,000.00 or more in annual billing; BAMs were responsible for accounts with less than $350,000.00 in annual billing. ESMs communicated with customers primarily in face-to-face settings. ESMs interacted with customers who were the "highest level" decision-makers. On the other hand, BAMs communicated with clients primarily by telephone, mail, and other electronic communications and spent the majority of their time in an office environment. BAMs communicated with "industry specific organizations and decision-makers within businesses." Because of the different levels of responsibility, ESMs received higher compensation than BAMs.

In 2005, CPS Energy posted six ESM positions. Beebe and fifteen other individuals applied for these positions. Beebe did not fare well in the selection process, rating twelfth in the scoring matrix. CPS Energy offered the positions to six individuals, two of whom were African American and four of whom were fifty years old or older. Beebe was not offered an ESM position; instead, Beebe was offered and accepted a position as a BAM. In 2006, CPS Energy posted another ESM position. Beebe applied for the position, but again was not selected. Beebe did not complain of CPS Energy's decisions not to select him for an ESM position in 2005 or in 2006.

In 2007, CPS Energy posted a BAM position and received over sixty applications. One of the applicants interviewed for the position was Yvonne Read. Read was employed as an account

manager with another company, Rackspace Hosting. In this position, Read was responsible for management of large customer accounts, which required face-to-face, one-on-one customer contact and service. Prior to working for Rackspace, Read was employed at Vital Needs International where she was a product manager for the launching of pharmaceutical products. At Vital Needs, she worked closely with high-level executives of Fortune 500 companies. Based on Read's experience managing large customer accounts in face-to-face settings and the communication skills and professionalism she exhibited during her interview, the interview panel believed Read was well-suited for an ESM position.

During the selection process for the BAM position, an ESM position became vacant. CPS Energy's Director of Retail Energy, John Saenz, asked members of the BAM interview panel if any of the recently-interviewed candidates were capable of filling the vacant ESM position. The interview panel recommended Read. Saenz then interviewed Read and requested approval from management to offer Read the ESM position without posting it. Saenz was granted permission to offer Read the ESM position. Read accepted the offer and began her employment as an ESM.

Thereafter, Beebe filed the underlying suit, claiming that CPS Energy engaged in discrimination when it did not promote him to the ESM position and hired Read instead. CPS Energy moved for traditional and no-evidence summary judgment on both the discrimination and retaliation claims. Beebe filed a response to the summary judgment motion. The trial court granted the summary judgment motion as to all claims without specifying the basis for its ruling. This appeal ensued.

## STANDARD OF REVIEW

We review a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence presented in the motion and response in the light most favorable to the party against whom summary judgment was rendered,

crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id*. (citing *City of Keller v. Wilson*, 168 S.W.3d 892, 827 (Tex. 2005)).

In a traditional motion for summary judgment, the movant bears the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). In a no-evidence summary judgment motion, the movant asserts there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). In responding to a no-evidence summary judgment motion, the respondent has the burden to produce evidence that raises a genuine issue of material fact on the challenged elements. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); s*ee King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ridgway*, 135 S.W.3d at 600. If the respondent fails to meet his burden to produce evidence that raises a genuine issue of material fact on the challenged elements, then the no-evidence summary judgment is proper. *See King Ranch*, 118 S.W.3d at 751; TEX. R. CIV. P. 166a(i).

**ANALYSIS**

Section 21.051 of the Texas Labor Code, a provision of the Texas Commission on Human Rights Act (TCHRA), prohibits an employer from refusing to hire or in any other way discriminating against an employee because of the employee's race, color, or age. *See* TEX. LAB. CODE ANN. § 21.051 (West 2006). When it enacted the TCHRA, the legislature intended state law to correlate to federal employment discrimination law. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

In discrimination cases that have not been fully tried on the merits, Texas courts apply the burden-shifting analysis established by the United States Supreme Court. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). Under this analysis, discrimination can be shown through the "pretext" method of proof. *Claymix Brick and Tile, Inc. v. Garza*, 216 S.W.3d 33, 35 (Tex. App.—San Antonio 2006, no pet.) (citing *McDonnell Douglas*, 411 U.S. at 802-05).

In a discrimination case based on the employer's failure to promote, the plaintiff must first make a prima facie case showing that (1) he was a member of a protected class; (2) he sought and was qualified for an available employment position; (3) he was not selected for the position; and (4) the employer selected someone not in his protected class.[1] *Elgaghil v. Tarrant Co. Jr. College*, 45 S.W.3d 133, 139 (Tex. App.—Fort Worth 2000, pet. denied); *see Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999). Once the plaintiff makes a prima facie case, the burden of production shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the employment action. *Elgaghil*, 45 S.W.3d at 139. If the employer does so, the burden shifts back to the plaintiff to prove that the employer's articulated reason was untrue and was given as a mere pretext for unlawful discrimination. *Id.* "Because it is relatively easy both for a plaintiff to establish a prima facie case and for a defendant to articulate legitimate, nondiscriminatory reasons for its decision, most disparate treatment cases are resolved at the third stage of the inquiry, on the issue of whether

---

[1]The prima facie standard is a flexible one that courts modify to apply to different situations. *Dupont-Lauren v. Schneider (USA), Inc.*, 994 F. Supp. 802, 818 (S.D. Tex. 1998). Therefore, courts have excused an employee's failure to apply for a position in a variety of situations, including when such an action would be futile or when the hiring process is secretive or informal. *Id.*; *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1132-33 (11th Cir. 1984).

the [employer's] reasons are pretextual." *Gladden-Green v. Freescale Semiconductor, Inc.*, No. 03-11-00468-CV, 2013 WL 6175622, at \*6 (Tex. App.—Austin Nov. 20, 2013, no pet.) (citing *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 813 (5th Cir. 1991)).

In three issues, Beebe argues the trial court erred in granting summary judgment because (1) he established a prima facie discrimination case, (2) the employer failed to demonstrate a legitimate, nondiscriminatory reason for its employment action, and (3) a genuine issue of material fact existed as to whether the employer's reason for the challenged action was merely a pretext for its real, discriminatory reason. In analyzing this appeal, we will assume, without deciding, that Beebe met his burden to establish a prima facie discrimination case. Therefore, we address only Beebe's second and third issues: whether CPS Energy articulated a legitimate nondiscriminatory reason for the challenged action, and whether a genuine issue of material fact issue existed as to CPS Energy's stated reason for not promoting him.

### Legitimate, Nondiscriminatory Reason

In its summary judgment motion, CPS Energy asserted that it had a legitimate, nondiscriminatory reason for not promoting Beebe to the ESM position. Specifically, CPS Energy stated that Read was selected because she possessed the executive-level account management experience and the communication skills needed to succeed as an ESM and that these were skills and experiences that Beebe lacked. "Selecting a more qualified applicant generally constitutes a legitimate, nondiscriminatory justification for failure to hire an applicant." *Little v. Texas Dept. of Criminal Justice*, 177 S.W.3d 624, 631 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

In his brief, Beebe asserts that CPS Energy failed to meet its burden to articulate a legitimate, nondiscriminatory reason for its employment action. We disagree. CPS Energy articulated a legitimate, nondiscriminatory reason for its employment action and produced ample evidence in support of its reason.

CPS Energy submitted affidavits from three individuals who were on the panel that interviewed Read. All three of these individuals stated that although they initially interviewed Read for the BAM position, Read's experience, including her current and past employment, and her performance during the interview process convinced them that she possessed the ability to be a successful ESM. They also stated that they were impressed with Read's prior experience in dealing with executive-level customers in a face-to-face setting and that during the interview Read presented herself in a very professional manner and exhibited superior communication, interpersonal, and leadership skills.

One of the individuals on Read's interview panel, Deborah Ortiz, was also one of Beebe's former supervisors. Ortiz stated in her affidavit that Beebe struggled with "oral and verbal communications" with other CPS employees and with customers. Ortiz also stated that in the past CPS Energy had paid for Beebe to receive training to improve his communication skills, but despite this training she did not see much improvement in this area. Ortiz further stated that in his current position Beebe was "not responsible for communicating face-to-face with a customer's executive level employees."

CPS Energy also submitted an affidavit from Saenz, who stated that he did not consider Beebe for the vacant ESM position in 2007 because Beebe had interviewed for the position in 2006 and had ranked low in the process. Saenz stated that Beebe had been placed on a performance improvement plan in 2006 because of his written and verbal communication skills, interpersonal behavior, and accountability. In addition, Saenz stated that he chose Read for the ESM position based solely on her performance in her interview and her demonstrated experience, confidence, and learning agility. According to Saenz, Read was the most qualified candidate he encountered for the ESM position.

We conclude that CPS Energy met its burden to articulate a nondiscriminatory reason for its action as a matter of law. Thus, to avoid summary judgment, the burden was on Beebe to produce evidence that the employer's stated reason for not promoting him to the ESM position was merely a pretext for its real, discriminatory reason.

### Pretext for Discrimination

A plaintiff demonstrates pretext by producing evidence that (1) the reason given by the employer was not its true reason for the employment action but rather a pretext for discrimination or (2) the reason given was unworthy of credence. *Exxon Mobile Corp. v. Hines*, 252 S.W.3d 496, 508 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). In the summary judgment context, a plaintiff does not have to prove pretext, but he must establish that a genuine issue of material fact exists. *Id.* At the pretext stage in the analysis, the issue is whether the employer's reason, even if incorrect, was the real reason for the employment action. *Zuniga v. City of San Antonio*, No. 04-13-00142-CV, 2014 WL 60929, at *4 (Tex. App.—San Antonio Jan. 8, 2014, pet. filed) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)). The employer is entitled to be unreasonable so long as it does not act with discriminatory animus. *Id.*

In his brief, Beebe argues that a genuine issue of material fact existed as to pretext. According to Beebe, the evidence showed that CPS Energy's stated reason for "failing to post the job[,] *i.e.*, the candidate was subject to other offers[,] was false." In support of his argument, Beebe directs our attention to an email that was attached to the employer's summary judgment motion. In the email, which is dated September 25, 2007, a CPS Energy employee writes to another CPS Energy employee,

> Saenz also communicated that he has an external candidate identified for this position. [Saenz] says this external candidate is very qualified and [Saenz] is concerned that if we don't make him a job offer soon we will [lose] him to another company. [Saenz] does not want to post his position internally or externally.

This email, however, does not raise a fact issue that either (1) the reason given by CPS Energy was not its true reason but rather a pretext for discrimination, or (2) the reason given was unworthy of credence. The email simply fails to raise a fact issue concerning CPS Energy's legitimate, nondiscriminatory reason for its employment action.

We conclude that Beebe failed to establish a genuine issue of material fact as to whether his employer's stated reason for not promoting him was a pretext for unlawful discrimination. In the absence of evidence raising a genuine issue of material fact issue as to pretext, the trial court did not err in granting summary judgment on Beebe's discrimination claims.

## CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice