In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00022-CV
_____

**JONATHAN SALDIVAR, Appellant**

**V.**

**CENTRIC OPERATIONS, LLC, Appellee**

**On Appeal from the 457th District Court**
**Montgomery County, Texas**
**Trial Cause No. 23-02-03005-CV**

**MEMORANDUM OPINION**

Jonathan Saldivar appeals the trial court's granting of a traditional motion for summary judgment. Saldivar sued Centric Operations, LLC ("Centric") for wrongful termination, discrimination based on national origin, and violation of Title VII of the Civil Rights Act of 1964 and Texas Labor Code section 21.051. Centric filed a traditional motion for summary judgment, arguing that Saldivar was terminated because he engaged in unsafe procedures, violated Centric's core value of integrity and various provisions of Centric's employee handbook, and was dishonest and

uncooperative during Centric's internal investigation. The trial court granted Centric's motion, and on appeal, Saldivar argues the summary judgment should be set aside due to the existence of genuine issues of material fact. We affirm.

Background

Plaintiff's Original Petition asserts Saldivar was hired as a crew foreman by Centric Operations, LLC on or about March 14, 2022. The petition alleges he brought safety and liability concerns to his supervisor after which he was called into the office of Billy Graves, Centric's Vice President of Construction, where Saldivar was questioned regarding an interaction with his crew. According to the petition, Saldivar was told he would be placed on paid administrative leave until the investigation was over, but on July 19, 2022, Jared Wondra, Director of Human Resources, notified Saldivar he was terminated. According to the petition, Saldivar later learned that Centric was claiming he had been untruthful regarding how residential gas lines were being pressure-tested, but Saldivar claims the pressure-testing method he used was approved by his supervisor at the time. Based on allegations that Saldivar, as a Hispanic male, is a member of a protected class and that discrimination by Centric was a motivating factor for his termination, Saldivar's petition asserts three causes of action: wrongful termination, discrimination based

on national origin, and violation of Title VII of the Civil Rights Act of 1964 and the Texas Labor Code.[1]

Centric filed a traditional motion for summary judgment asserting Saldivar "was terminated due to his lack of cooperation and untruths told during an internal investigation, admitted noncompliance with company policies and procedures, and violations of Centric's Core Value of Integrity and various provisions of the [e]mployee handbook." Centric's summary judgment evidence consists of: (1) pages from Centric's Employee Handbook; (2) job description for the position of crew foreman; (3) Saldivar's executed offer letter dated February 21, 2022; (4) termination of employment email sent to Saldivar on July 19, 2022; (5) declaration of Billy Graves, Vice President of Construction; and (6) declaration of Jared Wondra, Human Resources Director.

According to Centric's summary judgment motion, Centric opened an investigation after Graves was informed that Saldivar's crew was not utilizing the proper equipment or following the proper procedures – using air pressure supplied by an air compressor – to test residential gas lines. Centric asserts Saldivar was terminated because he failed to perform his job duties and comply with company

---

[1]The petition also includes allegations Centric interpreted as possibly asserting a claim that Centric discriminated against Saldivar by failing to promote him, but to the extent the petition asserts such a claim, it was dismissed by way of the trial court's summary judgment order, and Saldivar does not challenge that aspect of the order on appeal.

policies and procedures, and because he lied about his lack of compliance. Centric's motion argues all three of Saldivar's causes of action are premised on the same allegations of discrimination based on national origin, and summary judgment is proper on all three claims because: Centric had legitimate, nondiscriminatory reasons for terminating Saldivar's employment; Saldivar cannot show that Centric's reasons were pretextual and that discrimination was the real reason for his termination; and, Saldivar did not exhaust the administrative remedies by filing a charge of discrimination and receiving a right to sue notice.

Saldivar filed a Response to Centric's Traditional Motion for Summary Judgment asserting that he had exhausted the administrative remedy of filing a charge of discrimination, that he had received a right-to-sue notice, a copy of which was included among his summary judgment evidence, and that Centric's stated reason that he had violated company policies was a pretext for discrimination which was a motivating factor in his termination. His summary judgment evidence includes a copy of the right-to-sue letter along with Saldivar's own declaration, in which he explains the reasons for failing to use compressed air for pressure tests and declares that he was "neither untruthful nor uncooperative during the investigation."

The trial court signed an Order Granting Defendant's Traditional Motion for Summary Judgment without specifying the grounds on which summary judgment was granted. Saldivar then appealed.

4

## Standard of Review

We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). When the trial court does not specify the grounds on which it granted summary judgment, we must affirm if any of the summary judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000). With a traditional motion for summary judgment, the movant has the burden to establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018); *see also* Tex. R. Civ. P. 166a(b), (c). A defendant who conclusively negates at least one essential element of each of the plaintiff's causes of action is entitled to summary judgment. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). In our review, we take as true all evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "Evidence is conclusive only if reasonable people could not differ in their conclusions[.]" *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

## Analysis

Saldivar contends the trial court erred in granting summary judgment on his claim of discrimination under the Texas Commission on Human Rights Act

5

("TCHRA"). *See* Tex. Lab. Code Ann. § 21.051. TCHRA provides for the state law execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments. *Id.* § 21.001(1). In discrimination cases that have not been tried on the merits, Texas courts utilize the burden-shifting analysis prescribed by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *Flores v. City of Liberty*, 318 S.W.3d 551, 554 (Tex. App.—Beaumont 2010, no pet.). The plaintiff must first establish a prima facie case of discrimination. *McDonnell*, 411 U.S. at 802. If the plaintiff does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer does so, the burden then shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination. *McDonnell*, 411 U.S. at 805-07.

Centric's motion for summary judgment is not premised on the absence of a prima facie case of discrimination. Therefore, Centric assumed the burden to "'clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993) (emphasis in original) (quoting *McDonnell*, 450 U.S. at 255). Centric's motion asserts that Saldivar's termination was legitimate and

6

nondiscriminatory because of his violation of safety procedures and dishonesty during an internal investigation. In support of its motion, Centric relied in part on its employee handbook which Saldivar acknowledged receiving on March 14, 2022, and which advised employees that:

- The Employee Handbook does not constitute or is intended to constitute an express or implied contract guaranteeing continued employment for any employee;

- "Inadequate, substandard, or poor performance may be the cause for disciplinary action, up to and including, termination of employment."

- "You are expected to exercise caution in all work activities. You must immediately report any unsafe condition to the official company contacts for TXGUS. If you cause hazardous or dangerous situations, or fail to report or, where appropriate, remedy such situations, you may be subject to disciplinary action, up to and including termination of employment."

- An employee may be terminated from employment immediately, with or without warning or notice, for actions such as (i) committing acts of dishonesty towards the Company, its customers, other Employees, organizations servicing the Company or committing other acts which tend to bring the Company into disrepute; (ii) major violation of safety

7

policy and/or procedure; and (iii) failing to follow Company procedures.

- "Employees who violate Company safety rules may be subject to disciplinary action, up to and including termination."

Centric also attached to its motion the unsworn declaration of Billy Graves, Vice President of Construction at Centric Infrastructure Group.[2] Graves states that Centric is responsible for pressure-testing gas lines which run from a main delivery line to a residence to ensure it is safe and will operate properly. He also describes how Saldivar was singularly accountable for completing an accurate report for each job and ensuring processes and procedures were followed, including as it relates to pressure-testing gas lines. Graves avers that in July 2022, he was informed that Saldivar's crew was not utilizing the proper equipment (an air compressor) or following the proper procedures (using air pressure supplied by that air compressor) to test residential gas lines. Because of the serious safety implications of failing to properly pressure-test gas lines, including possible explosions, Centric immediately began an internal investigation into these allegations.

Graves further states that during the initial investigation, Saldivar repeatedly claimed that he and his crew had been testing every line they were working on but

---

[2]Pursuant to statute, an unsworn declaration may be used in lieu of an affidavit. *See* Tex. Civ. Prac. & Rem. Code § 132.001.

8

that after Saldivar was told that witnesses directly contradicted his assertions, Saldivar began to change his story. Graves says that Saldivar ultimately admitted that his crew had not tested lines for certain projects. Graves also details that a visual inspection of the air compressor onboard Saldivar's truck necessary to perform proper gas line testing revealed that it had been used very little, if any.

In the unsworn declaration of Jared Wondra, the Human Resources Director at Centric Infrastructure Group, Wondra states that Centric began an internal investigation following allegations Saldivar was not properly pressure-testing gas lines. Wondra details how during the investigation, Brady Hoot, a member of Saldivar's crew, confirmed that Saldivar's crew used the air compressor only one time during his tenure, and that was only to put air in the truck tires, not to pressure-test gas lines. Wondra explains that two other members on Saldivar's crew confirmed their crew had not been consistently or properly testing gas lines. Both Wondra and Graves characterize Saldivar as untruthful and uncooperative during the investigation, often improperly placing the blame on other individuals rather than taking accountability or responsibility for his actions or inactions.

Because Centric produced summary judgment evidence that Saldivar's employment was terminated for non-discriminatory reasons, Saldivar had the burden to produce evidence Centric's stated reasons were pretextual. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000). "To carry this

9

burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007); *see, also, Brown v. CB&I, Inc.*, No. 09-12-00521-CV, 2014 Tex. App. LEXIS 505, at *18 (Tex. App.—Beaumont Jan. 16, 2014, no pet.) (mem. op.). As the Texas Supreme Court explained in *Tex. Tech. Univ. Health Sciences Center v. Flores*, 709 S.W.3d 500, 506 (Tex. 2024), during the pretext step of *McDonnell's* burden-shifting framework, the plaintiff must present evidence sufficient to create a genuine issue of material fact showing the employer's stated reasons for its employment action were a pretext for discrimination. As explained in *Flores*,

> The United States Supreme Court has held that evidence that would allow the factfinder to disbelieve the employer's stated reason, in conjunction with the requisite prima facie case established at step one, "may permit" an inference "that the employer is dissembling to cover up a discriminatory purpose" even in the absence of additional, independent evidence of such discriminatory intent. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 149, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Flores*, 709 S.W.3d at 506.

"[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515 (emphasis in original). *See, also, Wal-Mart*, 121 S.W.3d at 740 ("The relevant inquiry is not whether the complaints made against [the plaintiff] were a pretext, but what they were a pretext *for*.") (emphasis in original).

10

Saldivar's summary judgment evidence included his own unsworn declaration in which he states that on or about July 11, 2022, he was notified of a crew meeting in which he was questioned last, given no context for the meeting, and was not asked a direct question. His declaration explains that at the meeting, Graves and Wondra told Saldivar that it was brought to their attention that "some procedures" were not being followed, and they asked him about those procedures. As for the process he was using to test the pressure of the gas lines, Saldivar explains, "I was given permission and authorized by my then Supervisor Jay to test it on gas as the compressor was not functioning." Saldivar states that he was told he had falsified documents in "Hudspot" but he had never entered any information into Hudspot. Saldivar also states that at the meeting he was told that he had not followed procedures, but he told them that his supervisor knew the process he was using, gave him permission, and authorized the process. Saldivar states that he was "neither untruthful nor uncooperative during the investigation."

In Saldivar's declaration, he admits he did not use compressed air to pressure-test residential gas lines, and although he states his supervisor allowed him to test the lines using gas instead, Saldivar provided no evidence to contradict Graves's declaration, as Centric's Vice President of Construction, that Saldivar was not utilizing the proper equipment nor following the proper procedure, raising "serious potential safety implications… including possible explosions." According to the

11

evidence submitted with its motion for summary judgment, Centric, after investigating, reached an employment decision based, at least in part, on Graves's and Wondra's perception that Saldivar was being untruthful since his story conflicted with statements provided by his crewmembers.

In his declaration, Saldivar claims he was truthful and cooperative. Assuming Saldivar's declaration is true – a presumption we must make when reviewing a summary judgment – Graves and Wondra should have believed Saldivar when his story came into conflict with his crewmembers and when he claimed his supervisor allowed him to engage in unsafe procedures. But the material issue in this case is not whether Graves and Wondra believed the wrong employees during its investigation. As the Texas Supreme Court has explained,

> Nearly every investigation that an employer conducts requires it to resolve factual disputes and make reasonable credibility determinations. Certainly it is hoped that employers will exercise due care in making the potentially devastating decision to terminate an employee for misconduct. But second-guessing an employer's judgment in such a situation provides a strong disincentive for companies to investigate allegations of employee misconduct in the first instance.

*Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002). Evidence that the "investigation was imperfect, incomplete, or arrived at a possibly incorrect conclusion" is not sufficient. *Wal-Mart*, 121 S.W.3d at 740. "An at-will employer does not incur liability for carelessly forming its reasons for termination." *Id*. Beyond criticizing Centric's investigation, Saldivar was required to provide

12

evidence that each of Centric's stated reasons for terminating Saldivar – Saldivar's admitted use of procedures Centric considered unsafe and Graves's and Wondra's perception that Saldivar was untruthful and uncooperative – were both false and mere pretexts for discrimination based on national origin.

Centric contends that Saldivar presented no evidence that its stated reasons were false, and that he failed to present any evidence that discrimination based on national origin played a factor in the decision to terminate him. We agree. Here, as in *Flores*, "the evidence does not permit a reasonable conclusion that the proffered justification" for his termination was either false or discriminatory. *Flores*, 709 S.W.3d at 507. To the contrary, the evidence conclusively establishes that Saldivar used gas instead of compressed air to pressure-test gas lines, that using gas for this purpose constituted a safety hazard, and that Saldivar could be terminated for safety violations pursuant to the employee handbook. Saldivar failed to present evidence that would allow a reasonable factfinder to disbelieve Centric's stated reasons for terminating him, and he failed to present evidence from which a reasonable factfinder could conclude that discrimination based on national origin was a motivating factor behind his termination.

We conclude the trial court did not err in granting Centric's motion for summary judgment because Saldivar failed to present evidence raising a genuine issue of material fact. Therefore, it is not necessary for us to consider Centric's

13

alternative ground that Saldivar failed to exhaust administrative remedies. *FM Props.*, 22 S.W.3d at 872-73.

## Conclusion

We overrule Saldivar's sole issue on appeal and affirm the trial court's judgment.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on May 22, 2025
Opinion Delivered August 28, 2025

Before Johnson, Wright and Chambers, JJ.