OPINION

NO. 04-05-00433-CV

CLAYMEX BRICK AND TILE, INC.,

Appellant

v.

Oscar GARZA,

Appellee

From the 293rd Judicial District Court, Maverick County, Texas

Trial Court No. 03-09-19460-MCV

Honorable Cynthia L. Muniz, Judge Presiding




Opinion by: Rebecca Simmons, Justice



Sitting: Alma L. López, Chief Justice

 Sandee Bryan Marion, Justice

 Rebecca Simmons, Justice



Delivered and Filed: August 23, 2006



REVERSED AND RENDERED



 Appellant Claymex Brick and File, Inc. ("Claymex") appeals the judgment of the trial court after a jury awarded Appellee
Oscar Garza damages for wrongful termination. Because there is no evidence that the stated reason for Garza's termination
was a pretext or that age was a motivating factor in his termination, we reverse the judgment of the trial court and render
judgment in favor of Claymex.

FACTUAL BACKGROUND


 Claymex is a distributor of a variety of brick and tile products with several plants and yards in both Mexico and Texas. At
the time of the allegations, Oscar Garza was fifty-one years old and employed by Claymex as a warehouseman. Garza's job
orders came from three different people: Rosalia Garza (dispatcher), Javier Bermea (operation manager) and Gerardo
Ramos (sales director). By all accounts, the warehouseman position entailed multiple jobs, part of which was conducting a
monthly inventory of the materials in the yard. It is these inventories that form the basis for the company monthly financial
statements. As such, the inventory is due the first of the month. There was some dispute, however, over whether the
inventory always needed to be completed before any other work or if the warehouseman was to complete the task as soon as
practicable. Claymex asserts that it is company policy that no trucks are to be loaded or unloaded on the first day of any
month until the inventory is complete. A review of the record supports Garza's good employment history with Claymex,
since he began with the company in 1997, including completion of previous inventories and other job responsibilities in a
satisfactory and acceptable manner.

 With regard to the events in early April of 2002, Garza testified that on April 1, 2002, he was told by Rosalia Garza to stop
his inventory count and to unload and load the trailers that had arrived in the yard. This task took him the remainder of the
day to complete. It was Garza's understanding that he was to give priority to these type of jobs, as he had done in the past. 
Around 6:00 p.m., another truck arrived and by 7:00 p.m., Garza determined the truck would be unloaded the following
morning.

 The following morning, Garza explained that he was sent to the bank and the post office, both part of his normal job
responsibilities. When he returned, Rosalia instructed him to unload the remaining trailer from the previous evening so that
it could return to Mexico. After Garza unloaded the trailer, he returned to the office to complete the inventory which
Rosalia acknowledged was, at times, turned in on the second of the month. Garza claims this is when he first encountered
Javier Bermea, his immediate supervisor. Bermea followed him into the yard and began yelling at him regarding the
inventory and Garza's failure to complete it on the first day of the month. A heated argument between Bermea and Garza
ensued and Garza left the worksite. Apparently, the following day upon his return Gerardo Ramos, Bermea's supervisor
informed Garza that he was fired. 

 Garza filed suit against Claymex alleging violation of the Texas Labor Code § 21.051. Garza did not allege any federal
claims against Claymex. A jury found that age was a motivating factor in Claymex's decision to fire Garza and that Garza
was entitled to recover damages. The jury awarded $74,838 in back pay, $60,000 for past compensatory damages and
$90,000 for future damages. The jury did not award any exemplary damages. Claymex filed a motion for judgment
notwithstanding the verdict which the trial court denied but granted a new trial. However, after Garza filed additional
briefings with the trial court, the trial court withdrew its oral order for a new trial and entered judgment against Claymex.

 In regards to Garza's wrongful termination claim, Claymex appeals on alternative grounds asserting that the evidence
adduced at trial is legally insufficient to support the jury's finding of employment discrimination based on age or even if the
evidence was sufficient, Garza failed to secure a jury finding on an adverse employment action. (1)

SUFFICIENCY OF THE EVIDENCE


 A. Standard of Review

 In conducting a legal sufficiency review, an appellate court views the evidence in a light that tends to support the disputed
finding and disregards all evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001). But
if the evidence only allows for one inference, neither jurors nor a reviewing court may disregard it. City of Keller v. Wilson,
168 S.W.3d 802, 822 (Tex. 2005). If more than a scintilla of evidence supports the finding, the no-evidence challenge must
fail. Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003). Moreover, if the evidence at trial would enable
reasonable minds to differ in their conclusions, a reviewing court must allow the jury to do so and not substitute its
judgment, so long as the evidence falls within a zone of reasonable disagreement. City of Keller, 168 S.W.3d at 822.

 B. Analysis

 Section 21.051 of the Texas Labor Code, a provision of the Texas Commission on Human Rights Act (TCHRA), prohibits
an employer from discharging or in any other way discriminating against an employee because of the employee's age. See
Tex. Lab. Code Ann. § 21.051 (Vernon 1996); (2) Canchola, 121 S.W.3d at 739. When evaluating discrimination in
employment claims, Texas courts generally follow the burden of shifting analysis set out by the United States Supreme
Court in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993), and McDonnell Douglas Corp. v. Green, 411 U.S.
792, 802 (1973). See, e.g., Canchola, 121 S.W.3d at 739. When there is no direct evidence of discriminatory intent,
discrimination can be shown indirectly through the "pretext" method of proof. See McDonnell Douglas, 411 U.S. at
802-05. Under this method, the plaintiff must first make a prima facie case showing that the plaintiff: (1) was discharged;
(2) was qualified for the position from which he was discharged; (3) is a member of a protected class; and (4) was either
replaced by someone outside the protected class, replaced by someone younger, or was otherwise discharged because of his
age. McDonnell Douglas Corp., 411 U.S. at 801-03.

 Once the plaintiff makes a prima facie showing the burden shifts to the defendant to demonstrate a legitimate
nondiscriminatory purpose for the employment action. Id. at 802. If the defendant meets this burden, then the plaintiff
must prove that the employer's stated reason for the adverse action was merely pretext for the real, discriminatory purpose. 
Id. However, when the case has been fully tried on the merits, as is the present case, we do not engage in the
burden-shifting analysis. Canchola, 121 S.W.3d at 739. Instead, the evaluation process is streamlined and we proceed
directly to whether the plaintiff presented enough evidence for a jury to find that discrimination occurred. Id.

 As an initial matter, Claymex argues that Garza quit and was not discharged and therefore did not suffer an adverse
employment action. Alternatively, Claymex argues that if Garza did not quit, he failed to complete his job responsibilities
and was fired for abandoning his job and insubordination, a legitimate, nondiscriminatory reason for the employee's
rejection. McDonnell Douglas, 411 U.S. at 802-07; Texas Dept. of Cmty Affairs v. Burdine, 450 U.S. 248, 256 (1981).
Although there is some discrepancy in the testimony regarding the facts of April 2, 2002, there is no question that Garza did
not complete the inventory on the day in question, that there was a heated exchange between Garza and Bermea and that
Garza left the worksite. 

 Garza testified that Bermea told him "if you don't like it, you should just go" and "what's more, you're fired." Garza
testified he tried to speak to Gerardo Ramos, Bermea's supervisor, but he was not in his office and so Garza left the
premises. According to the record, approximately fifteen minutes after the dispute and Garza's departure, Bermea told
Rosario that a replacement was needed for Garza. (3) Bermea agreed, however, that Garza never said that he "quit." Garza
testified that later that same day, he returned to the job site and spoke with Ramos at approximately 1:00 p.m. or 1:30 p.m. 
Ramos told him "[c]alm down. Go home. Let me talk to Javier, and we will talk tomorrow." On the following day, April
3rd, Garza arrived at Claymex to speak to Ramos who told him that he had spoken to Bermea and that Garza was fired.

 Considering there is some evidence of Garza's termination, we proceed directly to whether Garza presented enough
evidence to support the jury's finding that age discrimination was a motivating factor in Claymex's decision to terminate
him. City of Austin Police Dep't v. Brown, 96 S.W.3d 588, 596 (Tex. App.-Austin 2002, pet. dism'd) (stating "an
affirmative finding will be reviewed on appeal on the basis of whether the plaintiff produced sufficient evidence for the jury
to find discrimination had occurred"). In order to establish discriminatory intent, it was Garza's burden to prove that his age
was a motivating factor in Claymex's decision to terminate his employment. Canchola, 121 S.W.3d at 739. Because there is
no direct evidence of discriminatory intent and Claymex offered legitimate reasons for terminating Garza's employment,
Garza needed to show that the reason proferred by Claymex is "[1] false, and [2] that discrimination was the real reason." 
Id. at 740 (quoting St. Mary's Honor Ctr., 509 U.S. at 515) (emphasis in original).

 In the present case, Garza points to a job profile as some evidence that age was a motivating factor in his termination. The
job profile for warehouseman published by Claymex on April 30, 2001 was for a male, twenty to forty years of age. 
Although Garza argues the job profile for the position of warehouseman, requiring that the employee be under the age of
forty, was in effect when he was terminated and only changed after he brought this suit, he offers no supporting evidence.

 According to the documents, the profile was changed to eliminate age and gender on January 30, 2002, two months prior to
the termination. While there appears to be some question about this job profile, if for no other reason than one is translated
and one is not, there is no testimony refuting the date on the second profile. These are the only exhibits offered to establish
any basis for age discrimination. However, any conclusion that age was a motivating factor in Garza's termination based on
the previous job profile or on the change that took place two months prior to the incident would be nothing more than
blatant speculation. Similarly, Garza's assertion that Claymex eliminated age and gender from the job profile after he was
terminated, without any supporting evidence, is nothing more than conjecture. Consequently, the job profile forms provide
only suspicions, not evidence, and therefore legally amount to no evidence of age discrimination. See Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983) (stating "[w]hen the evidence offered to prove a vital fact is so weak as to
do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal
effect, is no evidence").

 It is not sufficient for Garza to simply present evidence that Claymex at one point had an age range on the job description
form. See Canchola, 121 S.W.3d at 740. Garza needed further evidence that his age was a motivating factor. Although
Garza points to his previous job evaluations as further evidence of pretext, Claymex never asserts a decline in job
performance as a basis for his termination. Outside of the warehouseman job profile forms, Garza presented no evidence
that Claymex's decision to discharge Garza was motivated by his age. Alternatively, even if the reasons Claymex cited for
terminating Garza were false, Garza still bore the ultimate burden to prove that Claymex discriminated against him because
of his age. Id.

 Garza failed to meet this burden. Garza cites nothing more than his suspicions as the basis for his age discrimination
claim. However, a party's suspicions or beliefs do not create evidence of discriminatory animus. Kindred, 650 S.W.2d at
63. As the Texas Supreme Court explained, "[t]he relevant inquiry is not whether the complaints made against [Garza]
were a pretext, but what they were a pretext for." Canchola, 121 S.W.3d at 740. The record is simply void of any evidence
that age was a motivating factor in Claymex's decision to terminate Garza's employment or that Claymex's articulated
reasons were pretextual. As such, there is no evidence to support the jury's finding that age was a motivating factor in
Garza's termination.

CONCLUSION


 We conclude that there is no evidence to support the jury's finding of age discrimination. Accordingly, Claymex's first
point of error is sustained. The trial court's judgment is hereby reversed and a take nothing verdict is rendered in favor of Claymex.



 Rebecca Simmons, Justice

1. Additionally, Claymex alleges that Garza's failure to obtain a jury finding on the reasonableness of his attorneys fees
waives his claim for these fees, the damages awarded by the jury are not supported by the evidence and the trial court erred
in awarding compensatory damages in excess of the statutory cap. Because we find there is no evidence upon which to
support the jury's findings of employment age discrimination, we do not address these remaining points of error.

2. Section 21.051 titled "Discrimination by Employer" states:

 An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin,
or age the employer:

 (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an
individual in connection with compensation or the terms, conditions, or privileges of employment; or

 (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to
deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

3. Later that day, Bermea also prepared a memorandum entitled "Renuncia de [Resignation of] Oscar Garza," yet Bermea
acknowledged that Garza never actually resigned.