Ehimarey H. OKPERE, Appellant

v.

NATIONAL OILWELL VARCO, L.P., Robbins & Myers, Inc., and T3 Energy Services, LLC, Appellees

NO. 14–15–00694–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed March 20, 2017.

820

Robert J. Filteau, Houston, TX, for appellant.

Steven J. Mitby, Jane Langdell Robinson, Debora Lynn Simon, Houston, TX, for appellees.

Panel consists of Chief Justice Frost and Justices Boyce and Wise.

## OPINION

Kem Thompson Frost, Chief Justice

In this appeal a discharged employee challenges the trial court's dismissal of his disability-discrimination suit against his former employers. The trial court granted the employers' summary-judgment motion, implicitly granting judgment on the ground that the discharged employee based his claim solely on specific evidence that constitutes inadmissible hearsay. We conclude the trial court correctly found the evidence to be inadmissible hearsay, but the trial court erred to the extent it granted summary judgment on this ground because the employee did not base his disability-discrimination claim solely on this evidence. Nonetheless, the summary-judg-

ment evidence proves as a matter of law the employers' legitimate, nondiscriminatory reasons for discharging the employee and does not raise a fact issue as to whether the employers' reasons were a pretext for discrimination. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Ehimarey H. Okpere worked as an "Electromechanical Assembler Lead" for about four months. Okpere alleges he was employed by appellees/defendants National Oilwell Varco, L.P., Robbins & Meyers, Inc., and T3 Energy Services, LLC (collectively, the "T3 Parties"). After he was fired, Okpere filed suit against the T3 Parties, alleging a single claim—that they discharged him because of his disability, in violation of Texas Labor Code section 21.051, a provision of Chapter 21 of the Texas Labor Code, the Texas Commission on Human Rights Act (the "Human Rights Act").

Okpere alleges that he was hospitalized for a stroke from May 5 to May 6, 2013, and that he resumed his regular work duties without restriction on May 7, 2013. His employment was terminated thirteen days later. At a deposition, Okpere testified that after his discharge, his "immediate team leader," [1] Francisco Guillen told him that Robert Wilberger (Okpere's supervisor during Okpere's employment) told Guillen that "they let [Okpere] go because of [his] condition, [his] stroke . . . that [he] would not be able to do the job." (hereinafter, the "Stroke Statement"). In an affidavit, Guillen testified that Wilberger never told Guillen that Okpere's employment was terminated because Okpere was disabled or because Okpere was thought to be disabled or because Okpere had suffered a stroke.

---

1. In an affidavit, Guillen testified that Guillen was Okpere's co-worker and that Wilberger supervised both Okpere and Guillen.

The T3 Parties moved for summary judgment asserting various grounds, including that Okpere based his claim solely upon the Stroke Statement, which is inadmissible hearsay. In his summary-judgment response, Okpere asserted that he based his disability-discrimination claim on being "regarded as having such an impairment," as defined in the amended version of the Human Rights Act that took effect in 2009.[2] The trial court granted the T3 Parties' motion to strike three paragraphs from Okpere's affidavit, granted the T3 Parties' summary-judgment motion, and dismissed Okpere's disability-discrimination claim. Okpere now challenges the trial court's summary judgment.

## II. ISSUES AND ANALYSIS

In discriminatory-treatment cases under the Human Rights Act, Texas courts follow the settled approach of the Supreme Court of the United States in recognizing two alternative methods of proof. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). The first method involves proving discriminatory intent by direct evidence of what the defendant did and said. *Id.* In the absence of direct evidence of discrimination, Texas courts apply the *McDonnell Douglas*[3] burden-shifting mechanism. *See id.* Under this framework, the plaintiff is entitled to a presumption of discrimination if the plaintiff meets the "minimal" initial burden of establishing a prima facie case of discrimination. *See id.* The prima facie case raises an inference of discrimination because courts presume these acts, if otherwise unexplained, are more likely than not

based on the consideration of impermissible factors. *See id.* Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000) (per curiam). If an employer moving for summary judgment proves as a matter of law a legitimate, non-discriminatory reason for the adverse employment action, the burden then shifts to the employee to raise a genuine fact issue as to whether the employer's reason was a pretext for discrimination. *See id.* Okpere asserts that the Stroke Statement constitutes direct evidence of discrimination, and he also relies on the *McDonnell Douglas* burden-shifting mechanism.

### *Summary–Judgment Grounds*

The T3 Parties moved for summary judgment on various grounds, including the following:

● Okpere bases his claim solely upon the Stroke Statement, which the T3 Parties claim is inadmissible hearsay; and

● The evidence proves as a matter of law legitimate, non-discriminatory reasons for Okpere's discharge, and Okpere cannot show that these reasons were a pretext for discrimination.

The trial court granted the T3 Parties' summary-judgment motion without specifying the grounds upon which the court based its decision.

**2.** *See* Act of May 27, 2009, §§ 1, 6, 2009 Tex. Gen. Laws at 869–70 (codified at Tex. Labor Code Ann. § 21.002(12-a)) (defining "regarded as having such an impairment" as "subjected to an action prohibited under Subchapter B or C because of an actual or perceived physical or mental impairment, other than an impairment that is minor and is expected to

last or actually lasts less than six months, regardless of whether the impairment limits or is perceived to limit a major life activity").

**3.** *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### Issues on Appeal

On appeal, Okpere asserts the following four issues:

(1) The trial court erred in granting the T3 Parties' summary-judgment motion because the court applied the wrong law, pre–ADA Amendments Act law, at the urging of the T3 Parties.

(2) The trial court erred in granting the T3 Parties' summary-judgment motion because Okpere presented direct and circumstantial evidence of disability discrimination.

(3) The trial court erred in granting the T3 Parties' summary-judgment motion on the affirmative defense that Okpere's condition was transitory and minor because the T3 Parties raised this defense for the first time in their summary-judgment reply and had not raised it in their answer.

(4) The trial court erred in granting the T3 Parties' summary-judgment motion because Okpere presented strong evidence of pretext, making summary judgment inappropriate.[4]

We review a grant of summary judgment de novo. *KCM Financial LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). In a traditional summary-judgment motion, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *Willrich*, 28 S.W.3d at 23. In our review of the trial court's granting of the T3 Parties' summary-judgment motion, we consider all the evidence in the light most favorable to Okpere, crediting evidence favorable to him if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks,*

*Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

### The Appellate Roadmap

On appeal, we first address whether the T3 Parties waived their complaint that the Stroke Statement is hearsay. In the course of doing so, we address the summary-judgment ground in which the T3 Parties asserted that Okpere bases his claim solely upon the Stroke Statement. We take this approach in analyzing the appellate issues because though the T3 Parties claim the Stroke Statement is inadmissible, they actually attached it to their summary-judgment motion and did not formally object or move to strike this evidence. This unusual tactic raises an issue as to whether the T3 Parties waived their hearsay objection by offering the evidence as summary-judgment proof. After unpacking this issue, we find that the T3 Parties did not waive their hearsay complaint and we conclude that Okpere has not shown that the trial court erred in determining that the Stroke Statement is inadmissible hearsay. Even so, we hold that the summary judgment cannot be affirmed on the ground that Okpere bases his claim solely upon the inadmissible Stroke Statement. We then address the summary-judgment ground

---

4. Okpere has not challenged on appeal the trial court's striking of three paragraphs from Okpere's summary-judgment affidavit, and we do not consider these three paragraphs in our review of the summary-judgment evidence.

that the evidence proves as a matter of law legitimate, non-discriminatory reasons for Okpere's discharge and that Okpere cannot show that these reasons were a pretext for discrimination. In the end, we conclude that the trial court did not err in granting summary judgment on this ground, and we do not reach any of the other summary-judgment grounds.

### A. Have the T3 Parties waived their complaint that the Stroke Statement is inadmissible hearsay?

Because the Stroke Statement lies at the heart of the T3 Parties' summary-judgment motion, as a threshold matter on appeal we address Okpere's argument that the T3 Parties have waived any evidentiary objection that the Stroke Statement constitutes inadmissible hearsay.

■ The T3 Parties have argued that Okpere's claim is based solely on the Stroke Statement, that the Stroke Statement is inadmissible hearsay, and that Okpere's claim thus fails as a matter of law. Rather than seek summary judgment and then object to Okpere's evidence of the Stroke Statement after Okpere presented the evidence in response, the T3 Parties took the unusual step of attaching Okpere's deposition testimony regarding the Stroke Statement to their summary-judgment motion and then sought summary judgment on the ground that Okpere bases his claim solely upon the Stroke Statement, which they say is inadmissible hearsay. Utilizing this uncommon procedural maneuver, the T3 Parties asserted that evidence key to Okpere's claim was inadmissible hearsay via a summary-judgment ground rather than by a formal evidentiary objection. On appeal, Okpere asserts that the T3 Parties waived their hearsay objection by failing to get a ruling from the trial court on their complaint that the Stroke Statement is inadmissible hearsay.

■ A party must present summary-judgment evidence in a form that would be admissible at trial. See *In re Estate of Guerrero*, 465 S.W.3d 693, 706 (Tex. App.–Houston [14th Dist.] 2015, pet. denied) (en banc). This court and other courts of appeals have held that certain defects in summary-judgment evidence are defects in substance that a party may raise on appeal even if the party failed to complain or secure an adverse ruling in the trial court. See *id.* at 706–07. An inadmissible-hearsay complaint raises a defect in form rather than a defect in substance, and so a party must present this complaint to the trial court and obtain an explicit or implicit ruling; otherwise, the evidence may raise a genuine fact issue as part of the summary-judgment evidence. See *id.*; *Dolcefino v. Randolph*, 19 S.W.3d 906, 925 (Tex. App.–Houston [14th Dist.] 2000, pet. denied).

■ In today's case, the T3 Parties arguably presented the Stroke Statement as part of the summary-judgment evidence attached to their motion, while simultaneously complaining in a summary-judgment ground that the Stroke Statement is inadmissible hearsay. Okpere attached the same deposition testimony regarding the Stroke Statement to his summary-judgment response. The T3 Parties did not formally object or move to strike this evidence. Nevertheless, when the trial court granted the T3 Parties' summary-judgment motion without specifying the grounds upon which the court granted the motion, the trial court implicitly granted judgment based on each of the grounds, including the ground that Okpere bases his claim solely on the Stroke Statement, which is inadmissible hearsay. See *FM Props. Operating Co.*, 22 S.W.3d at 872; *Wasserberg v. 84 Lumber Co., L.P.*, No. 14-10-00136-CV, 2011 WL 3447493, at *2 (Tex. App.–Houston [14th Dist.] Aug. 9,

2011, no pet.) (mem. op.). We conclude that by its implicit ruling, the trial court determined that the Stroke Statement is inadmissible hearsay and sustained the T3 Parties' argument that the trial court should not consider evidence of the Stroke Statement in determining whether to grant summary judgment. *See FM Props. Operating Co.*, 22 S.W.3d at 872; *Wasserberg*, 2011 WL 3447493, at *2. Because the T3 Parties presented this complaint to the trial court and obtained an implicit ruling, they did not waive this complaint, and we may not consider this evidence as part of the summary-judgment evidence unless we conclude the trial court erred in making this determination. *See In re Estate of Guerrero*, 465 S.W.3d at 706–07; *Dolcefino*, 19 S.W.3d at 925.

In cases in which the movant did not seek summary judgment on a ground that certain evidence was inadmissible on a specific basis, this court has concluded that a trial court's implicit sustaining of a movant's summary-judgment grounds does not constitute a ruling on objections to the summary-judgment evidence by either the movant or the nonmovant. *See Parkway Dental Assocs. v. Ho & Huang Props.*, 391 S.W.3d 596, 601, 603–04 (Tex. App.–Houston [14th Dist.] 2012, no pet.); *Transcontinental Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 692–93, 700 (Tex. App.–Houston [14th Dist.] 2010, no pet.); *Dolcefino*, 19 S.W.3d at 916, 925–27. But, these cases are not on point because they did not involve a party who sought to complain about the inadmissibility of certain summary-judgment evidence by the trial court's granting of summary judgment on a ground in which the party specifically asserted the evidentiary complaint. *See Parkway Dental Assocs.*, 391 S.W.3d at 601, 603–04; *Transcontinental Ins. Co.*, 321 S.W.3d at 692–93, 700; *Dolcefino*, 19 S.W.3d at 916, 925–27. On the record now before us, we conclude that the T3 Parties secured an implicit ruling on their inadmissible-hearsay complaint and therefore they did not waive this complaint.[5] *See In re Estate of Guerrero*, 465 S.W.3d at 706–07; *Dolcefino*, 19 S.W.3d at 925.

## B. Did the trial court err in concluding that the Stroke Statement is inadmissible hearsay?

■ On appeal, Okpere does not expressly assert that the trial court erred in concluding that the Stroke Statement is inadmissible hearsay. But, Okpere asserts that the Stroke Statement is not inadmissible hearsay and that the Stroke Statement raised a fact issue precluding summary judgment. Therefore, we liberally construe Okpere's appellate brief to include a challenge to the trial court's determination that the Stroke Statement is inadmissible hearsay. *See Speedy Stop Food Stores, Ltd. v. Reid Road Mun. Util. Dist.*, 282 S.W.3d 652, 655 (Tex. App.–Houston [14th Dist.] 2009) (liberally construing appellant's brief to include challenge to trial court's order striking summary-judgment affidavit even though the appellant did not

5. Okpere cites *Trusty v. Strayhorn* in support of his argument that the T3 Parties waived their evidentiary complaint. *See* 87 S.W.3d 756, 760 (Tex. App.–Texarkana 2002, no pet.). That case is not binding on this court, and in any event, the reasoning in that case supports our conclusion that the T3 Parties did not waive their complaint. *See id.* (stating "[t]hese cases lead us to the conclusion that the party objecting to summary judgment proof still has the burden to obtain a ruling on that party's objections, but that the burden is satisfied if (1) the record affirmatively indicates that the trial court ruled on the objections to the summary judgment proof in granting summary judgment, or (2) **the grounds for summary judgment and the objections to the summary judgment proof are of such a nature that the granting of summary judgment necessarily implies a ruling on the objections**") (emphasis added).

expressly state this argument but instead argued the affidavit raised a genuine issue of material fact), *aff'd,* 337 S.W.3d 846 (Tex. 2011).

■ The Rules of Evidence define "hearsay" as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Tex. R. Evid. 801(d). Guillen did not make his alleged statement that Wilberger told Guillen that "they let [Okpere]· go because of [his] condition, [his] stroke ... that [he] would not be able to do the job" while testifying at the current trial or hearing, and Okpere offers the Stroke Statement to prove the truth of the matter asserted in the Stroke Statement. The Stroke Statement thus falls within the definition of hearsay. *See* Tex. R. Evid. 801(d).

■ A statement is not hearsay if it is offered against an opposing party and *if* the statement "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Tex. R. Evid. 801(e)(2)(D). On appeal, Okpere asserts that the Stroke Statement is not hearsay and is admissible because it is an admission of a party opponent under this subsection of Rule 801(e)(2). *See id.* For this subsection to apply, Guillen must have made the Stroke Statement on a matter within the scope of his employment. *See id.* The summary-judgment evidence supports the trial court's implicit determination that the reason Wilberger allegedly stated for the termination of Okpere's employment was not a matter within the scope of Guillen's employment. *See Staheli v. Univ. of Miss.,* 854 F.2d 121, 126–27 (5th Cir. 1988) (concluding that testimony of a professor as to an out-of-court statement by the university chancellor about why the plaintiff was denied tenure was not an admission of a party opponent because the professor lacked authority to make tenure decisions and had nothing to do with any personnel matter regarding the plaintiff). Therefore, the trial court did not err in impliedly determining that the Stroke Statement was not an admission of a party opponent. *See id.;* Tex. R. Evid. 801(e)(2)(D).

■ Hearsay is not admissible unless a statute, the rules of evidence, or other rules prescribed under statutory authority provide otherwise. Tex. R. Evid. 802. Though Texas Rules of Evidence 803 and 804 recognize a number of exceptions to the hearsay rule, Okpere does not assert on appeal that any of these exceptions apply. Tex. R. Evid. 803, 804. The only other exception that Okpere arguably asserts on appeal is an exception under the Human Rights Act. Okpere appears to argue that because the Stroke Statement is direct evidence of disability discrimination, it is admissible even though hearsay. Two federal district courts have indicated that evidence's alleged status as direct evidence of discrimination does not insulate it from exclusion as hearsay, and none of the cases Okpere cites hold that this status constitutes a hearsay exception.[6] *See Knox v. City of Monroe,* No. 07-606, 2009 WL 57115, at *7 (W.D. La. Jan. 8, 2009); *Andrade v. City of San Antonio,* 143 F.Supp.2d 699, 709, n.74 (W.D. Tex. 2001). Presuming for the sake of argument that

---

6. Although Texas courts enforce the plain meaning of the Human Rights Act and binding Texas precedent as to this statute's interpretation, Texas courts also look to federal law and federal cases for guidance in situations in which the language of the Human Rights Act and the analogous federal statute contain the same or substantially similar language. *See Prairie View A & M Univ. v. Chatha,* 381 S.W.3d 500, 505 (Tex. 2012). In addition, the definitions of "hearsay" and "admission of a party opponent" under the Federal Rules of Evidence are similar to those definitions under the Texas Rules of Evidence.

the Stroke Statement, if admissible, would be direct evidence of disability discrimination, we conclude that this status does not provide an exception to the hearsay rule. *See Knox*, 2009 WL 57115, at *7; *Andrade*, 143 F.Supp.2d at 709, n.74.

▮ Okpere has not shown that the trial court erred in concluding that the Stroke Statement is inadmissible hearsay. *See* Tex. R. Evid. 801, 802; *Staheli*, 854 F.2d at 126–27; *Knox*, 2009 WL 57115, at *7; *Andrade*, 143 F.Supp.2d at 709, n.74; *Courtney v. Nibco, Inc.*, 152 S.W.3d 640, 645 (Tex. App.–Tyler 2004, no pet.). Therefore, the Stroke Statement is not part of the summary-judgment evidence, and we may not consider the Stroke Statement as possibly raising a fact issue precluding summary judgment. *See In re Estate of Guerrero*, 465 S.W.3d at 706–07; *Dolcefino*, 19 S.W.3d at 925. In his second issue, Okpere argues that the trial court erred in granting the T3 Parties' summary-judgment motion because Okpere presented direct and circumstantial evidence of disability discrimination. The only evidence upon which Okpere relies under this issue is the Stroke Statement. Because Okpere has not shown that the trial court erred in concluding that the Stroke Statement is inadmissible hearsay, Okpere has not shown reversible error under the second issue, and we overrule that issue.

Though Okpere emphasizes the Stroke Statement in his arguments in support of his claim, the summary-judgment response and the evidence he submitted show that he does not base his claim solely upon the Stroke Statement. Therefore, the trial court erred to the extent it granted summary judgment on the ground that Okpere bases his claim solely upon the inadmissible Stroke Statement.

## C. Did the summary-judgment evidence raise a fact issue as to whether the employers' legitimate, nondiscriminatory reasons for discharging the employee were a pretext for discrimination?

### 1. Okpere's Perceived–Disability Claim under the Amended Human Rights Act

Under the Human Rights Act, an employer commits an unlawful employment practice if because of disability the employer discharges an individual. Labor Code Ann. § 21.051 (West, Westlaw though 2015 R.S.). According to the statute, "disability" means, with respect to an individual, a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment.[7] Labor Code Ann. § 21.002(6) (West, Westlaw though 2015 R.S.). Okpere does not assert that, at any material time, he has had a mental or physical impairment that substantially limits at least one major life activity or that he has had a record of such an impairment.[8] Instead, Okpere argues that he had a "disability" based on "being regarded as having such an impairment." *See id.*

Before September 1, 2009, the Human Rights Act did not contain a definition of "being regarded as having such an impairment." *See* Act of May 27, 2009, §§ 1, 6, 2009 Tex. Gen. Laws at 869–70 (adding to Labor Code section 21.002(12–a), which contains a statutory definition of "regarded

---

7. There are two exclusions in the statutory definition of "disability," but neither exclusion applies to today's case. *See* Labor Code Ann. § 21.002(6) (West, Westlaw though 2015 R.S.).

8. At his deposition, Okpere testified that he has never been disabled at any time in his life. Okpere agreed that he is not disabled even though he had a stroke.

as having such an impairment"). Under this earlier version of the statute, the third category in the "disability" definition was "being regarded as having a mental or physical impairment that substantially limits at least one major life activity of the individual." *See* Act of May 26, 1997, § 1, 1997 Tex. Gen. Laws 2676, 2676; *City of Houston v. Proler*, 437 S.W.3d 529, 533 & n.16 (Tex. 2014).

In 2009, the Texas Legislature added subsection (12–a) to Labor Code section 21.002 and amended the Human Rights Act in other ways in an attempt to mirror the corresponding changes that Congress made to the Americans with Disabilities Act by the ADA Amendments Act of 2008. *See* Pub. Law. No. 110–325, 122 Stat. 3353 (2008); Act of May 27, 2009, 81st Leg., R.S., ch. 337, §§ 1–6, 2009 Tex. Gen. Laws 868, 868–70. Under this statutory definition of "regarded as having such an impairment," the third category in the "disability" definition is "subjected to an action prohibited under Subchapter B or C because of an actual or perceived physical or mental impairment, other than an impairment that is minor and is expected to last or actually lasts less than six months, regardless of whether the impairment limits or is perceived to limit a major life activity." Labor Code Ann. § 21.002(12–a). To fall within the third category under the current version of the statute, the perceived mental or physical impairment need not substantially limit at least one major life activity, but it must not be minor and expected to last less than six months. *See id.* The current version of the Human Rights Act applies to today's case.

## 2. The *McDonnell Douglas* Burden–Shifting Mechanism

In discriminatory-treatment cases under the Human Rights Act, Texas courts follow the settled approach of the Supreme Court of the United States in recognizing two alternative methods of proof. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). The first method involves proving discriminatory intent by direct evidence of what the defendant did and said. *Id.* In today's case, Okpere asserts that the Stroke Statement constitutes direct evidence of discrimination; but, as discussed in section II. B. above, Okpere has not shown that the trial court erred in concluding that the Stroke Statement is inadmissible hearsay. Okpere does not assert that there is any other direct evidence of discrimination, nor does the summary-judgment record contain any such evidence. In the absence of direct evidence of discrimination, we are to apply the *McDonnell Douglas*[9] burden-shifting mechanism. *See id.* Under this framework, the plaintiff is entitled to a presumption of discrimination if the plaintiff meets the burden of establishing a prima facie case of discrimination. *See id.* The prima facie case raises an inference of discrimination because the court presumes these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. *See id.*

We presume for the sake of argument that Okpere established a prima facie case of discrimination based on perceived disability. Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. *See Willrich*, 28 S.W.3d at 24; *Haver v. Coats*, 491 S.W.3d 877, 883 n.3 (Tex. App.–Houston [14th Dist.] 2016, no pet.).

**9.** *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The T3 Parties moved for summary judgment on the ground that the evidence proved as a matter of law legitimate, non-discriminatory reasons for Okpere's discharge and that Okpere cannot show that these reasons were a pretext for discrimination. Once an employer moving for summary judgment proves as a matter of law a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts to the employee to raise a genuine fact issue as to whether the employer's reason was a pretext for discrimination. *See Willrich*, 28 S.W.3d at 24; *Haver*, 491 S.W.3d at 883 n.3.

In his fourth issue, Okpere asserts that the trial court erred in granting summary judgment because Okpere presented "strong evidence of pretext" which raised a fact issue precluding summary judgment. On appeal, Okpere does not argue that in the T3 Parties' summary-judgment evidence they failed to prove as a matter of law a legitimate, non-discriminatory reason for Okpere's discharge. We address whether the summary-judgment evidence raises a genuine fact issue as to whether the T3 Parties' reasons for Okpere's discharge were a pretext for discrimination. *See Willrich*, 28 S.W.3d at 24; *Haver*, 491 S.W.3d at 883 n.3. That means raising a genuine fact issue as to whether the T3 Parties' proffered reasons for Okpere's discharge were false and raising a genuine fact issue as to whether disability discrimination was the real reason for Okpere's discharge. *See Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 576 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

### 3. The T3 Parties' Summary–Judgment Evidence

The T3 Parties attached to their summary-judgment motion excerpts from Okpere's deposition, the affidavit of Irene Acevedo, and the affidavit of Francisco Guillen. In the attached deposition excerpts, Okpere testified as follows:

- Okpere had a stroke on May 5, 2013; it was the only stroke Okpere has ever had.
- Many people have had strokes and are not disabled.
- Okpere has never been disabled at any time in his life.
- The basis of Okpere's claim is "perceived disability."
- Okpere would start his shift at either 6:00 a.m., 7:00 a.m., or 8:00 a.m.
- The T3 Parties had a policy that employees had to report to work on time every day that they were scheduled to work.
- If Okpere had to be late for work for some reason, he would call either Francisco Guillen or Robert Wilberger.
- Okpere was never late to work, not even one time.
- Okpere called in to Guillen one time when Okpere was on his way to work after being discharged from the hospital to tell Guillen that Okpere was going to be late.
- Okpere understood that he was subject to being fired if he came to work late without an approved excuse.
- Wilberger disciplined and suspended Okpere on May 13, 2013, because Okpere did not help clean up an area that was not his area.
- At the time Wilberger suspended Okpere, no one had said anything to Okpere about Okpere being disabled.
- After being hospitalized for a stroke, Okpere returned to work on May 7, 2013.
- There was no part of Okpere's job that he had trouble doing because of his stroke. Okpere had no mental or physical impairments after the stroke.

- No one at Robbins & Meyers ever expressed to Okpere a belief that Okpere was disabled in any way.
- No one at Robbins & Meyers ever expressed to Okpere a belief that Okpere had any limitation because of the stroke.
- The only time Okpere mentioned the word "stroke" to Wilberger was when Okpere was about to leave for the hospital on the day he had the stroke.
- Okpere did not discuss the stroke with Wilberger after he returned to work on May 7, 2013.
- Okpere thinks that on the morning of May 20, 2013, his shift started at 7:00 a.m.; that morning Okpere called Wilberger and told him he was on his way to work and that he had just been released from the hospital. Wilberger told Okpere to be sure to bring his work release showing that he could work without restrictions.
- Okpere does not recall whether he called Wilberger before or after 7:00 a.m.
- Okpere claims he was released from the hospital at 7:00 a.m. on May 20, 2013, and drove straight to work, after having been hospitalized for a panic attack.

In her affidavit, Irene Acevedo testified as follows:

- Acevedo is a Human Resources Generalist for National Oilwell Varco.
- Acevedo approved the termination of Okpere's employment, a decision that was within her authority and was necessary for Okpere's discharge. Acevedo made this decision for the reasons set forth in her affidavit.
- Wilberger advised Acevedo that Okpere's job performance was not at the required standard. Acevedo received an email from Wilberger to this effect on February 7, 2013. This information factored into Acevedo's decision to approve the termination of Okpere's employment.
- Acevedo understood that Okpere had issues with attendance in the spring of 2013. For example, he was a "no-call, no show" on May 17, 2013, and was substantially late for his shift on May 20, 2013. These issues factored into Acevedo's decision to approve the termination of Okpere's employment.
- The T3 Parties have a strict absenteeism policy stating that an employee is expected to report to work on time every day, to call in each day the employee will be absent, and that poor attendance and punctuality will be grounds for disciplinary action, up to and including termination.
- Acevedo approved the termination of Okpere's employment after he was substantially late to work on May 20, 2013.
- None of the supervisors or employees at the facility where Okpere worked ever communicated to Acevedo that Okpere was disabled, that they thought Okpere was disabled, or that they thought Okpere was unable to perform his job duties due to any kind of physical or mental limitation.
- Acevedo's decision to approve Okpere's discharge was based on Okpere's absences and tardiness and was not based in any way on any belief that Okpere was disabled, that the employees at the facility where Okpere worked observed him to be disabled or that they believed he could not perform his job duties, or any general job duties, due to any physical or mental limitation.

Attached to Acevedo's affidavit was Okpere's employee timecard, showing that he

reported for work at 9:34 a.m. on May 8, 2013, that he did not work on May 14, May 15, or May 17, and that he reported for work at 8:27 a.m. on May 20, 2013. Also attached to Acevedo's affidavit was an Employee Discipline Report showing that an "attendance" incident occurred on May 20, 2013, and that Okpere was dismissed. The "Summary of the Incident/Situation" was that "Employee failed to report to work at the assigned time." The "Findings" were that "[t]his has become a trend and we are moving forward with termination effective 5/20/13." Also attached to Acevedo's affidavit was an email sent by Acevedo on May 20, 2013, stating that Okpere's "doctor's note shows him as being out from 5/16–5/18 with full release to return to work on 5/19." Acevedo stated that there was no excuse for him to report to work late on May 20, 2013, and that she agreed that they should terminate Okpere's employment.

In his affidavit, Guillen testified that Wilberger never told Guillen that Okpere was terminated because Okpere was disabled, because Wilberger believed Okpere to be disabled, or because Okpere had suffered a stroke. Guillen also testified that no one else from the T3 Parties told Guillen that Okpere was terminated because Okpere was disabled, because Okpere was thought to be disabled, because Okpere had suffered a stroke, or because Okpere was unable to work.

#### 4. Okpere's Summary–Judgment Evidence

In opposition to the T3 Parties' summary-judgment motion, Okpere submitted excerpts from his deposition, including a letter offering Okpere employment in January 2013, excerpts from Acevedo's deposition, excerpts from Wilberger's deposition, Okpere's affidavit, a document stating that Guillen was Okpere's manager, and Okpere's hospital records. In the attached deposition excerpts, Okpere testified that a doctor told Okpere that Okpere had experienced a minor stroke on May 5, 2013, because Okpere's blood pressure had gone up. Okpere testified that on that same day Okpere told Wilberger that Okpere's doctor said Okpere's symptoms could be the sign of a minor stroke.

In the deposition excerpts, Acevedo testified that if an employee were late one time for work, that would not be "a fireable offense," and that normally would result in a verbal warning. Acevedo did not recall whether Okpere had been "written up" for being tardy before May 20, 2013, and Acevedo has not seen any documents reflecting that Okpere was "written up." To Acevedo's knowledge, she did not advise Okpere that his performance needed improvement, and Acevedo does not know of any one who advised Okpere of the need for improved performance. Other than the February 7, 2013 email, Acevedo does not recall receiving any written comments about Okpere's job performance.

In the deposition excerpts, Wilberger testified that the policy was "[p]rogressive discipline at the discretion of the manager, depending on the severity of the incident." Wilberger indicated that at any point in time he could terminate the employee, explaining that he did not need to give a verbal warning, then a first written warning, and then a second written warning. Wilberger stated that he probably did not fill out an Employee Discipline Report form with a box checked showing that a verbal warning had been given. Wilberger did not recall filling out an Employee Discipline Report form with a box checked showing that any written warning had been given and it was his standard procedure "to put a written warning in writing." Wilberger stated he did not recall seeing an Employee Discipline Report regarding any alleged poor performance by Okpere. Wilberger indicated that he and Acevedo

made a joint decision to terminate Okpere's employment.

In his affidavit, Okpere stated that the T3 Parties were his employers from January 2013 through May 2013. The trial court struck the remainder of Okpere's substantive affidavit testimony. Okpere also submitted five pages of hospital records. On one page, there is a statement that Okpere's "Admit Date" was May 16, 2013, and that his "Discharge Date" was May 18, 2013.

### 5. Okpere's "Pretext" Arguments

■ Under the fourth issue, Okpere notes that the Employee Discipline Report form regarding his discharge has five boxes that may be checked corresponding to the following actions: (1) verbal warning, (2) first written warning, (3) second written warning, (4) third written warning, and (5) dismissal. The documents attached to Acevedo's affidavit contain only one of these forms, with the box for "dismissal" checked. Okpere suggests, based on the options on the form, that the T3 Parties had internal procedures that required a verbal warning or a written warning before an employee could be discharged. Okpere argues that the T3 Parties' failure to follow their internal procedures requiring oral and written warnings before termination of employment raises a fact issue regarding pretext.

Though the Employee Discipline Report form provides space to show that a verbal or written warning was given and to show that previous warnings were given, the form does not state that a verbal or written warning is required before employment may be terminated. Nor does the form refer to all possible forms of discipline because it fails to mention the possibility of a suspension. Indeed, Okpere testified that Wilberger suspended Okpere one week before this discharge. Neither

Acevedo nor Wilberger testified that any policy required a verbal or written warning before an employee could be discharged. Though Acevedo attached to her affidavit one page from a document containing Robbins & Meyers policies, there is no statement on this page that a verbal or written warning is required before an employee may be discharged. In his deposition testimony, Wilberger testified that the policy was "[p]rogressive discipline at the discretion of the manager, depending on the severity of the incident." Wilberger indicated that at any point in time he could terminate the employee. As noted, Wilberger stated that he was not required to give a verbal (oral) warning, then a first written warning, and then a second written warning.

Under the applicable standard of review, the evidence does not raise a genuine fact issue as to whether any of the T3 Parties had an internal procedure requiring that Okpere receive an oral or written warning before his employment could be terminated. *See Goodyear Tire & Rubber Co.*, 236 S.W.3d at 755. Therefore, we need not address how a fact issue on this point would impact our analysis of the summary-judgment evidence to determine if there is a genuine fact issue as to whether the T3 Parties' reasons for Okpere's discharge were a pretext for discrimination.

Okpere asserts that in the Employee Discipline Report, the only reason given for his discharge was that he reported to work at 8:27 a.m. on May 20, 2013, when he was scheduled to start work at 7:00 a.m. Yet, the report also contained a notation indicating a pattern of unacceptable conduct: "This has become a trend and we are moving forward with termination effective 5/20/13." Okpere's timecard showed that he reported for work at 9:34 a.m. on May 8, 2013.[10] Acevedo attached this time-

10. Okpere testified that he would start his shift at either 6:00 a.m., 7:00 a.m., or 8:00 a.m.

card to her affidavit and stated that she understood that Okpere had issues with attendance in the spring of 2013. Okpere cites deposition testimony from Acevedo that an employee's being late one time for work would not be "a fireable offense" and normally would result in a verbal warning. But, the Employee Discipline Report and Acevedo's affidavit each show that Okpere was discharged for more than being late for work a single time.

Okpere cites his deposition testimony that he was never late to work at Robbins & Meyers, "not even one time." But, in his next answer, Okpere testified that on one occasion, when Okpere "was released from the hospital on [his] way to work," he called Guillen to tell him that he was going to be late. In the same deposition, Okpere testified that he thought his start time on May 20, 2013 was at 7:00 a.m. and that he was released from the hospital on that day at 7:00 a.m. and then drove to work, which would mean he was late to work on May 20, 2013. Okpere's timecard provides specific evidence as to when he arrived for work in May 2013. Reasonable and fair-minded jurors could not differ in their conclusions as to whether Okpere was late for work on May 20, 2013, in light of all the summary-judgment evidence. See Tooker v. Alief Indep. Sch. Dist., 522 S.W.3d 545, 559–62, 2017 WL 61833, at *10–11 (Tex. App.–Houston [14th Dist.] Jan. 4, 2017, no pet. h.) (concluding that conclusory, speculative, and unsubstantiated evidence regarding the hours employee worked did not raise genuine fact issue precluding summary judgment). The summary-judgment evidence conclusively proves that Okpere was late for work on May 20, 2013, and the evidence does not raise a genuine fact issue as to whether Okpere was never late for work. See id.

Okpere cites a case in which the United States Court of Appeals for the Fifth Circuit reviewed a summary judgment dismissing a claim under the Americans with Disabilities Act. See Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 231–32, 238 (5th Cir. 2015). According to Okpere, under this case, the trial court was not permitted to consider any alleged legitimate, non-discriminatory reason for Okpere's discharge stated in Acevedo's affidavit but not set forth in the Employee Discipline Report because these reasons were advanced by the T3 Parties after the May 20, 2013 decision to discharge Okpere. The Burton court relied on a line of Fifth Circuit cases in which the courts disregarded purported non-discriminatory reasons for an employment decision based on facts that occurred after the discharge decision was made or based on facts not known to the decisionmaker at the time of the decision. See id. Okpere has not cited and research has not revealed any Texas case applying this line of cases to a claim under the Human Rights Act. We presume without deciding that this line of cases applies to claims under the Human Rights Act. Even so, the rule from this line of cases does not apply to the reasons stated in Acevedo's affidavit because these reasons are based on facts that occurred before the decision to discharge Okpere, and, according to Acevedo's affidavit, Acevedo was aware of these facts when she decided to approve Okpere's discharge. Thus, this line of cases in not on point. See id.

Okpere asserts that Acevedo's testimony that Okpere was a "no-call, no show" on May 17, 2013, is not believable because in her May 20, 2013 email, Acevedo mentions that Okpere had produced a doctor's note for his absence from work on May 17, 2013. But, Okpere's return to work with a doctor's note explaining his absence on May 17 is not inconsistent with Okpere having failed to show up for work on that day without a call on that day explaining

his absence. According to Okpere, if Okpere had failed to call in sick on May 17, Acevedo would have mentioned this fact in her email. In the email, Acevedo states that she had just called "Cassie" and had given her "the scope of the issues we've had with [Okpere] regarding his attendance." Acevedo did not state that she was reciting these issues in her email. Acevedo's failure to mention in the email anything about a "no-call, no show" on May 17, 2013, does not deprive her affidavit testimony on this point of probative value.

The record contains summary-judgment evidence that Okpere was discharged from the hospital on May 18, 2013; but, Okpere testified that he was discharged from the hospital at 7:00 a.m. on May 20, 2013, and drove straight to work from the hospital, after having been hospitalized for a panic attack. Even presuming that Okpere was discharged from the hospital at 7:00 a.m. on May 20, 2013, Okpere did not submit any summary-judgment evidence proving that he presented any document to the T3 Parties showing he had just been discharged from the hospital, to excuse or explain his late arrival at work that day.[11]

On appeal, Okpere asserts the following:

- Some of the reasons Acevedo gives in her affidavit for her decision to approve Okpere's discharge are not mentioned in the Employee Discipline Report;
- Before he was discharged, Okpere "had never been written up for tardiness or attendance";
- Okpere had never received any verbal or written warnings before his discharge; and
- The reasons given by the T3 Parties for Okpere's discharge have changed over time.

In his perceived-disability-discrimination claim, Okpere asserts that the T3 Parties terminated his employment because they perceived him to have a physical or mental impairment, other than an impairment that is minor and is expected to last or actually lasts less than six months, regardless of whether the impairment limits or is perceived to limit a major life activity. See Labor Code Ann. §§ 21.002(6), (12–a), 21.051. Presuming that all of the arguments noted above are correct and that Okpere was discharged from the hospital at 7:00 a.m. on May 20, 2013, we conclude that under the applicable standard of review, the summary-judgment evidence still does not raise a genuine fact issue as to whether disability discrimination was the real reason for Okpere's discharge. See Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 740 (Tex. 2003); Winters, 132 S.W.3d at 576–80; Claymex Brick & Tile, Inc. v. Garza, 216 S.W.3d 33, 36–37 (Tex. App.–San Antonio 2006, no pet.); White v. Schlumberger, Ltd., No. 01-05-00685-CV, 2006 WL 948074, at *5 (Tex. App.–Houston [1st Dist.] Apr. 13, 2006, no pet.) (mem. op.). Therefore, the summary-judgment evidence does not raise a genuine fact issue as to whether the T3 Parties' reasons for the discharge were a pretext for discrimination. See Canchola, 121 S.W.3d at 740; Winters, 132 S.W.3d at 576–80; Claymex Brick & Tile, Inc., 216 S.W.3d at 36–37; White, 2006 WL 948074, at *5. We thus overrule Okpere's fourth issue.

**D. Is part of the statutory definition of "regarded as having such an impairment" an affirmative defense?**

In his third appellate issue, Okpere asserts that the trial court erred in granting

---

11. The summary-judgment evidence does not contain the doctor's note or any other docu-

ment that Okpere presented on May 20, 2013.

the T3 Parties' summary-judgment motion based on the affirmative defense that Okpere's perceived impairment was minor and transitory because the T3 Parties did not raise this defense in their answer. Okpere asserts that the part of the statutory definition emphasized below is an affirmative defense that the T3 Parties were required to plead and prove:

"Regarded as having such an impairment" means subjected to an action prohibited under Subchapter B or C because of an actual or perceived physical or mental impairment, **other than an impairment that is minor and is expected to last or actually lasts less than six months,** regardless of whether the impairment limits or is perceived to limit a major life activity.

Labor Code Ann. § 21.002(12–a) (emphasis added). We address this argument because our analysis of the pretext issue (section II. C., above) implicates this definition.[12] Okpere has not cited and research has not revealed any case addressing this issue.

An affirmative defense is an independent reason why the plaintiff should not recover, without regard to the truth of the factual assertions in the plaintiff's case. *See Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 485 (Tex. 2016); *Genesis Tax Loan Servs. v. Koth-*

*mann*, 339 S.W.3d 104, 107–08 (Tex. 2011); *Gorman v. Life Ins. Co. of No. Am.*, 811 S.W.2d 542, 546 (Tex. 1991). But, in Okpere's disability-discrimination claim, Okpere has the burden to prove disability, which, in this case, includes the burden to prove Okpere was "regarded as having such an impairment." *See* Labor Code Ann. §§ 21.002(6), (12–a), 21.051; *Canchola*, 121 S.W.3d at 739. Under the statutory definition, part of this burden is proving that the actual or perceived impairment is not minor or is not expected to last or actually lasts less than six months. *See* Labor Code Ann. §§ 21.002(6), (12–a). Because this element of the statutory definition comprises part of the plaintiff's burden of proof and is not an independent reason why the plaintiff should not recover, we conclude that this component of the definition is not an affirmative defense.[13] *See Genesis Tax Loan Servs.*, 339 S.W.3d at 107–08. We overrule the third issue.

## III. Conclusion

The trial court implicitly determined that the Stroke Statement is inadmissible hearsay and sustained the T3 Parties' argument that the trial court should not consider evidence of the Stroke Statement in determining whether to grant

12. Okpere also asserts that the trial court erred in granting summary judgment because the T3 Parties raised this defense in their summary-judgment reply rather than in their summary-judgment motion. On appeal, we are not considering any summary-judgment ground raised in the summary-judgment reply but not in the summary-judgment motion, so this part of the third issue does not show any reversible error.

13. The corresponding part of the Americans with Disabilities Act is worded differently: For purposes of paragraph (1)(C):
(A) An individual **meets the requirement** of "being regarded as having such an impairment" **if the individual establishes** that he or

she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
(B) Paragraph (1)(C) **shall not apply** to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.
42 U.S.C. 12102(3) (emphasis added). We need not and do not address whether a defendant's assertion that an actual or perceived impairment is transitory and minor is an affirmative defense under the Americans with Disabilities Act. *See id.*

summary judgment. Because the T3 Parties presented this point to the trial court and secured an implicit ruling, they did not waive their inadmissible-hearsay complaint. Okpere has not shown that the trial court erred in ruling that the Stroke Statement is inadmissible hearsay. Therefore, the Stroke Statement is not part of the summary-judgment evidence, and we do not consider it as possibly raising a fact issue precluding summary judgment. The minor-and-temporary-impairment part of Labor Code section 21.002(12–a)'s definition of "regarded as having such an impairment" is not an affirmative defense, and so the T3 Parties were not required to plead it. Under the applicable standard of review, the summary-judgment evidence does not raise a genuine fact issue as to whether disability discrimination was the real reason for Okpere's discharge, and so does not raise a genuine fact issue as to whether the T3 Parties' reasons for the discharge were a pretext for discrimination.[14] Concluding that Okpere has not shown that the trial court erred in granting summary judgment, we affirm.

---

14. In his first appellate issue, Okpere asserts that the trial court erred in granting summary-judgment based on certain summary-judgment grounds that the T3 Parties based on the law before the ADA Amendments Act of 2008 and before the 2009 Amendments to the Human Rights Act. *See* Pub. Law. No. 110–325, 122 Stat. 3353 (2008); Act of May 27, 2009, 81st Leg., R.S., ch. 337, §§ 1–6, 2009 Tex. Gen. Laws 868, 868–70. Because we are not affirming the trial court's judgment on any such ground, we need not and do not address whether any of the other grounds were based improperly on prior law.